## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| BENJAMIN JACOBSON, Individually and on Behalf of All Others Similarly Situated, | X<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>)   Civil Action No. _____<br>) |
| ARATANA THERAPEUTICS, INC., CRAIG A. TOOMAN, CRAIG A. BARBAROSH, DAVID L. BRINKLEY, IRVINE O. HOCKADAY, JR., MERILEE RAINES, LOWELL W. ROBINSON, ROBERT P. ROCHE, JR., JOHN VANDER VORT, WENDY L. YARNO, ELANCO ATHENS INC., and ELANCO ANIMAL HEALTH INCORPORATED, | )   **CLASS ACTION**<br>)<br>)   **JURY TRIAL DEMAND**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF
## SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Benjamin Jacobson ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of Aratana Therapeutics, Inc. ("Aratana" or the "Company") against Aratana's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Elanco Animal Health Incorporated through its wholly-owned subsidiary Elanco Athens Inc. (collectively "Elanco").

1

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement (the "S-4") to be filed with the United States Securities and Exchange Commission ("SEC") on May 30, 2019 and the subsequently filed, and substantively similar, Schedule 14A Proxy Statement filed with the SEC on June 17, 2019 (the "Proxy"). The S-4 and the Proxy recommend that Aratana shareholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Aratana is acquired by Elanco. The Proposed Transaction was first disclosed on April 26, 2019, when Aratana and Elanco announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Aratana stockholders will receive 0.1481 shares of Elanco and one contingent value right of $0.25 for each share of Aratana common stock that they hold (the "Merger Consideration"). The deal is valued at approximately $234 million, which would increase to $245 million including the contingent value right payment, and is expected to close in mid-2019.

3.     The Proposed Transaction was approved by the Board after pressure from an activist investor. While the Company had just begun bringing in significant revenue, profitability was within reach. But before Aratana could hit that point, the Board agreed to sell the Company. The Merger Consideration fails to adequately value the Company, falling short of analyst price targets.

4.     Furthermore, the S-4 and Proxy are materially incomplete and contain misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the S-4 and the Proxy contain materially incomplete and misleading information concerning the sales process, financial projections prepared by Aratana management, and the financial analyses conducted by Barclays Capital Inc. ("Barclays"), Aratana's financial advisor.

5.    For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the Proxy with the SEC or otherwise causing an amendment to the Proxy to be disseminated to Aratana's shareholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Aratana's shareholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

6.    Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Aratana.

7.    Defendant Aratana is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 11400 Tomahawk Creek Parkway, Suite 340, Leawood, Kansas 66211. Aratana common stock trades on NASDAQ under the ticker symbol "PETX."

8.    Defendant Craig A. Tooman has been President, Chief Executive Officer ("CEO") and a director of the Company since January 17, 2019.

9.    Defendant Craig A. Barbarosh has been a director of the Company since May 2018.

10.    Defendant David L. Brinkley has been a director of the Company since 2014.

11.    Defendant Irvine O. Hockaday, Jr. has been a director of the Company since 2014.

12.    Defendant Merilee Raines has been a director of the Company since 2014.

13.    Defendant Lowell W. Robinson has been a director of the Company since May 2018.

14.    Defendant Robert P. Roche, Jr. has been a director of the Company since 2014.

15.    Defendant John Vander Vort has been a director of the Company since 2012.

16.    Defendant Wendy L. Yarno has been a director of the Company since 2013 and Chairperson of the Board since 2015.

17.    Defendants Tooman, Barbarosh, Brinkley, Hockaday, Raines, Robinson, Roche, Vander Vort and Yarno are collectively referred to herein as the "Board."

18.    Defendant Elanco Animal Health Incorporated is an Indiana corporation with its principal executive offices located at 2500 Innovation Way, Greenfield, Indiana 46140.

19.    Defendant Elanco Athens Inc. is a Delaware corporation and is a wholly owned subsidiary of Elanco Animal Health Incorporated.

## JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

21.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant portion of the conduct at issue took place and had an effect in this District; and (ii) Aratana is incorporated in this District.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Aratana common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

24.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable. As of April 23, 2019, Aratana had approximately 48.9 million shares outstanding.

(b)     Questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)   Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file an amendment to the Proxy with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v)     whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### SUBSTANTIVE ALLEGATIONS

**A.  The Board Bowed to Pressure to Sell the Company**

25.     Aratana develops therapeutic products for pets. Currently, the Company sells three such products: ENTYCE stimulates appetite in dogs; NOCITA is a post-surgery pain relief product; and Galliprant relieves pain and inflammation in canine osteoarthritis. There are a number of products in development, including an appetite stimulant for cats and a treatment of atopic dermatitis for dogs.

26.     The Company is quite young, having been incorporated in 2010 and having its initial public offering in 2013. It was just in 2016 when Aratana began receiving significant revenues. Analysts set price targets ranging from $6.00 per share to $10.00 per share after that point. By the end of 2018, analysts were already declaring it possible for Aratana to become profitable by 2020.

27.     But in 2018, at least one Aratana stockholder was not happy with the Company's performance. Engaged Capital, LLC ("Engaged Capital") held 5.2% of Aratana's outstanding common stock as of April 2018. In March 2018, Engaged Capital wrote to the Company to nominate Defendants Barbarosh and Robinson, as well as Eric J. Ende, for election to the Board. In May 2018, Aratana and Engaged Capital settled the issue, with Defendants Barbarosh and Robinson joining the Board. As part of the settlement, the Company agreed to create a Strategic Review Committee to review Aratana's business and make recommendations to the Board concerning the Company's strategy and strategic alternatives to enhance stockholder value. One year later, on April 26, 2019, Aratana entered into the Merger Agreement with Elanco.

28.     Engaged Capital has a history of pressuring companies to "enhance stockholder value." For example, in February 2018, after Engaged Capital pushed Rent-A-Center Inc to sell itself, that company agreed to nominate one of Engaged Capital's preferred representatives to its board of directors. Rent-A-Center entered into a merger agreement with Vintage Capital Management, LLC in July 2018. And Engaged Capital has continued to pressure companies. For example, in December 2018, Engaged Capital urged Del Frisco's Restaurant Group to explore a sale of some of its brands. Part of that campaign included appointing Engaged Capital's preferred representatives to Del Frisco's board of directors and forming a strategic review committee to consider strategic alternatives.

29.     Furthermore, the Proposed Transaction, a product of pressure from an activist investor, does not adequately capture the value of the Company. Analysts set price targets as high as $10.00 per share in the year before the Board approved the Proposed Transaction. And the analyses of the Company's own financial advisor illustrates that the Merger Consideration may not be high enough. For example, Barclays's *Selected Precedent Transaction Analysis* implied a per share equity value as high as $5.54, while the *Selected Comparable Company Analysis* implied a per share equity value as high as $5.15.

### B.  The Preclusive Deal Protection Devices

30.     As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

31.     By way of example, section 6.3(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal. Section 6.3(a) further demands that the Company cease and terminate all solicitations, discussions or negotiations with any party concerning an acquisition proposal.

32.     Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be Elanco. For example, pursuant to section 6.3(e) of the Merger Agreement, the Company must notify Elanco of any offer, indication of interest, or request for information made by an unsolicited bidder. Thereafter, should the Board determine that the unsolicited offer is superior, section 6.3(d)(ii) requires that the Board grant Elanco four (4) business days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior. Elanco is able to match the unsolicited offer because, pursuant to section 6.3(d)(i) of the Merger Agreement, the Company must provide Elanco with the identity of the party making

the proposal and the material terms of the superior proposal, eliminating any leverage that the Company has in receiving the unsolicited offer.

33.    In other words, the Merger Agreement gives Elanco access to any rival bidder's information and allows Elanco a free right to top any superior offer. Accordingly, no rival bidder is likely to emerge and act as a stalking horse for Aratana because the Merger Agreement unfairly assures that any "auction" will favor Elanco and allow Elanco to piggy-back upon the due diligence of the foreclosed second bidder.

34.    In addition, pursuant to section 9.3(b)(i) of the Merger Agreement, Aratana must pay Elanco a termination fee of $7 million if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

35.    Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances. Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of Elanco's inadequate offer price.

**C. The Materially Incomplete and Misleading Proxy**

36.    The Individual Defendants must disclose all material information regarding the Proposed Transaction to Aratana stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

37.    On May 30, 2019, Defendants filed the S-4 with the SEC and subsequently filed the substantively similar Proxy with the SEC on June 17, 2019. The purpose of both filings is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, Aratana shareholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

### Materially Misleading Statements/Omissions Regarding the Financial Forecasts for the Company and Elanco

38.    The S-4 and the Proxy disclose management-prepared financial projections for the Company which are materially misleading. Both filings indicate that in connection with the rendering of Barclays's fairness opinion, Barclays reviewed "financial and operating information with respect to the business, operations and prospects of Aratana . . . including financial projections of Aratana prepared by management of Aratana." Accordingly, the S-4 and Proxy should have, but failed to, provide certain information in the projections that Aratana's management provided to the Board and Barclays.

39.    Notably, Defendants failed to disclose the financial projections for both the Initial and Updated Management Projections for fiscal years 2019 to 2040 for: (a) revenue by type (i.e. licensing and collaboration, sales) and by specific product; (b) costs of revenue by type (i.e. licensing and collaboration, sales) and by specific product; (c) royalty expense; (d) R&D; (e) SG&A; (f) in-process R&D; (g) depreciation; (h) amortization; (i) stock-based compensation expense; (j) capital expenditures; (k) changes in net working capital; and (l) income tax expense.

40.    Additionally, Defendants fail to disclose any financial projections for Elanco even though the S-4 and Proxy reveal that Barclays "reviewed and analyzed" the financial projections

for Elanco for 2019 prepared by Elanco management.

41.    This omitted information is necessary for Aratana stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning Barclays's Financial Analyses*

42.    With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose the specific individual inputs and assumptions utilized by Barclays to derive the discount rate range of 11% to 15%. The Proxy further fails to disclose the implied range(s) of terminal revenue and/or EBITDA multiples resulting from the analysis, as well as the specific terminal period unlevered free cash flow metric to which Barclays applied its selected range of perpetuity growth rates, and how it was calculated. In addition, the Proxy fails to disclose whether Barclays treated stock-based compensation as a cash or non-cash expense. Finally, the Proxy fails to disclose the assumed amount of payments received in 2022 for the Galliprant milestones, as utilized by Barclays.

43.    With respect to the *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the individually observed EV/Revenue multiples for each of the selected transactions. The Proxy also fails to disclose whether Barclays performed any type of benchmarking analysis for Aratana in relation to the target companies.

44.    With respect to the *Selected Companies Analysis,* the Proxy fails to disclose the individually observed multiples for EV/2019 revenue and EV/2020 revenue each of the selected public companies analyzed by Barclays. The Proxy also fails to disclose the exact amount of the 2020 non-recurring milestone payments for Galliprant excluded by Barclays in its analysis.

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

45.    The Proxy also fails to disclose material information concerning the sales process. For example, the Proxy fails to state whether the confidentiality agreements Aratana entered into

11

with eight parties (other than Elanco) are still in effect. The disclosure of the terms of any standstill provisions is crucial to Aratana stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company. Furthermore, the Proxy fails to identify which parties, besides Elanco, Company A, Company B, Company C and Company D, entered into confidentiality agreements and when those parties ended their participation in the sales process.

46.    The Proxy also fails to disclose information about the parties involved in the sales process. For example, the Proxy notes that two companies contacted Aratana or Barclays about a potential transaction with Aratana, but ultimately expressed that they were not interested in a potential transaction. It is not clear when those statements were made, whether those parties entered into confidentiality agreements with the Company, and the extent of discussions between Aratana and those parties. The same is true for the four companies that signed confidentiality agreements with Aratana in September or October 2018 but would not submit a proposal.

47.    Additionally, the Proxy fails to disclose analyses and presentations made by Barclays to the Board or the Strategic Review Committee. This includes the preliminary valuation analysis of Aratana discussed at the October 19, 2018 Strategic Review Committee; the preliminary valuation analysis of Aratana discussed at the March 28, 2019 Strategic Review Committee meeting; the preliminary views on valuation of Aratana discussed with the Board on April 3, 2019; and the discussion of Elanco's proposal at the April 9, 2019 Board meeting.

48.    This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Aratana

stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

49.    In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

50.    Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

51.    Further, the Proxy indicates that on April 25, 2019, Barclays reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Aratana shareholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Barclays's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

52.    Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9**

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     Defendants have filed the S-4 and Proxy with the SEC with the intention of soliciting Aratana shareholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the S-4 and Proxy, which fail to provide the material information referenced above.

55.     In so doing, the Individual Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Aratana, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). Aratana and Elanco are liable as issuers of the S-4 and the Proxy.

56.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

57.     Specifically, and as detailed above, the  Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Aratana shares and the financial analyses performed by Barclays in support of its fairness opinion; and (iii) the sales process.

14

58.    Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Barclays reviewed and discussed its financial analyses with the Board during various meetings including on April 25, 2019, and further states that the Board relied upon Barclays's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections identified above to be materially incomplete and misleading.

59.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

60.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61.    The Individual Defendants acted as controlling persons of Aratana within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Aratana and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

62.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

64.    In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

65.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

66.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the Proxy with the SEC or otherwise disseminating an amendment to the Proxy to Aratana shareholders unless and until Defendants agree to include the material information identified above in any such amendment;

C.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

D.     In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.     Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 25, 2019

**RIGRODSKY & LONG, P.A.**

By:  _/s/ Gina M. Serra_
      Brian D. Long (#4347)
      Gina M. Serra (#5387)
      300 Delaware Avenue, Suite 1220
      Wilmington, DE 19801
      Telephone: (302) 295-5310
      Facsimile: (302) 654-7530
      Email: bdl@rl-legal.com
      Email: gms@rl-legal.com

**OF COUNSEL:**

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Telephone: (914) 400-1920
Facsimile: (914) 301-3514

      _Attorneys for Plaintiff_

18